# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| CALVIN W. JOHNSON, SR. | CIVIL ACTION NO. 16-0351 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment (Record Document 26) filed by Defendants, Corporal Brad Sotak ("Sotak") and the City of Shreveport ("the City"). Defendants seek a judgment dismissing Plaintiff Calvin W. Johnson, Sr.'s ("Johnson") (1) federal excessive force claim to the extent same stems from Sotak's use of handcuffs when taking Johnson into protective custody; (2) Monell claim against the City in its entirety; (3) false arrest claim in its entirety; and (4) state law excessive force and negligence claims to the extent same depend on Sotak's use of handcuffs when taking Johnson into protective custody. Defendants have not moved for summary judgment on the component of the excessive force claim relating to Johnson's allegation that Sotak slung Johnson into his vehicle or intentionally caused Johnson to make contact with his vehicle.

Johnson does not oppose the motion as to the dismissal of the Monell claims against the City and all claims of false arrest under both federal and state law. See Record Document 28 at 1. Johnson "opposes the dismissal of any claim arising out of handcuffing as use of force only in regards to a dismissal's form and wording." Record Document 28 at 3. More specifically, Johnson submits:

> Plaintiff makes no [claim for] typical handcuffing injuries such as nerve damage in wrists. However, Plaintiff does claim that being handcuffed (1) prevented him from avoiding injury, (2) assisted Sotak in his use of force[,] (3) he should not have been handcuffed at all and (4) is a factor for the jury to consider whether force was necessary or reasonable.

Record Document 28 at 8.

For the reasons set forth below, Defendants' Motion for Partial Summary Judgment is **GRANTED**. Johnson's Monell claim against the City and his false arrest claims under both federal and state law are **DISMISSED WITH PREJUDICE**. Johnson's federal excessive force claim to the extent same depends on the necessity or lack thereof in utilizing handcuffs when executing the Order of Protective Custody is **DISMISSED WITH PREJUDICE**. Likewise, Johnson's state law battery/excessive force and negligence claims to the extent same depends on the necessity or lack thereof in utilizing handcuffs when executing the Order of Protective Custody are **DISMISSED WITH PREJUDICE**. Johnson's federal excessive force claim and state law excessive force and negligence claims relating to the allegation that Sotak slung Johnson into his vehicle or intentionally caused Johnson to make contact with his vehicle remain.

**I.     BACKGROUND**

On March 17, 2015, the Caddo Parish Deputy Coroner issued an Order of Protective Custody. See Record Document 26-8. The order provided:

> **Description of threats which have led to the belief that the person needing treatment is mentally ill or suffering from substance abuse and is in need of immediate hospitalization to protect himself/herself from physical harm:**
>
> > Mr. Calvin W. Johnson Jr. (son) came to this Office today seeking assistance for his father, Calvin W. Johnson Sr. According to Mr. Johnson his father has a medical history of bi-

> polar disorder and previous commitments. For the past week Mr. Calvin W. Johnson Sr. (father) has been non-compliant with his medications and refuses to sleep. Today he became violent with family members and feels that they are plotting on him. His condition is becoming worse each day. Mr. Calvin Johnson Jr. (son) feels that Mr. Calvin W. Johnson Sr. (father) is a danger to himself and others by his actions and condition; it is ordered that he be picked up and transported to University Health for psychiatric evaluation and/or treatment.

Id. Johnson does not dispute the validity of the Order of Protective Custody, which ordered he be taken into custody in accordance with Louisiana Revised Statute 28:53.2. See Record Document 26-1 at ¶ 1; Record Document 28-1 at ¶ 1.

On March 19, 2015, at approximately 8:58 a.m., Sotak was dispatched to take Johnson into custody and transport him to University Health in accordance with the Order of Protective Custody. See Record Document 26-1 at ¶ 3. Sotak proceeded to Johnson's location at the Bill Cockrell Recreation Center on Pines Road in Shreveport, Louisiana. See id. at ¶ 4.[1] Upon arriving, Sotak parked his vehicle in the parking lot in front of the recreation center. See id. at ¶ 5. Sotak then asked dispatch for details concerning the Order of Protective Custody. See id. at ¶ 6. He was informed that Johnson was non-compliant with his medication, was refusing to sleep, was violent with his family, and that the family considered Johnson to be a danger to himself and others. See id.

Sotak observed Johnson exiting the gym and entering his vehicle. See id. at ¶ 7. Sotak then positioned his vehicle behind Johnson's van. See id. While Sotak's MVS captured the initial interaction with Johnson, namely Sotak's first attempts to handcuff

---

[1] Sotak's drive to the recreation center, parts of his interaction with Johnson, and his transportation of Johnson to the hospital were recorded on Sotak's police vehicle's motor vehicle system ("MVS"). See Record Document 26, Exhibit 6 (MVS DVD).

Johnson, it did not capture "the impact of Johnson's head to the van" or "all of the handcuffing." See id.; see also Record Document 28-1 at ¶ 7. The MVS shows Sotak proceed to the driver's side of Johnson's vehicle. See Record Document 26-1 at ¶ 8; Record Document 28-1 at ¶ 8. Johnson asks Sotak "what seems to be the problem." Id. Sotak asked Johnson to exit the vehicle to speak with him. See id. Johnson agreed and exited the vehicle. See id. Sotak confirmed Johnson's identity and asked him to "put your hands behind your back for me real quick." See id.; see also Record Document 26, Exhibit 6 (MVS DVD at 09:13:48).

The MVS shows Sotak's initial interaction with Johnson. See Record Document 26, Exhibit 6 (MVS DVD at 09:13:48). Johnson did not immediately comply with Sotak's command to put his hands behind his back. See id., Exhibit 6 (MVS DVD at 09:13:50). The MVS shows that Sotak grabbed Johnson's left wrist and placed a handcuff on it. See id., Exhibit 6 (MVS DVD at 09:13:52). Johnson's right hand remained free and he did not voluntarily extend his right hand for cuffing. See id., Exhibit 6 (MVS DVD at 09:13:55-58). While the MVS maintains sound, both Sotak and Johnson go outside of camera range at approximately 09:14:00 and the facts surrounding the incident from this point forward are contested.

According to Sotak, Johnson moved several times as if to try and face Sotak. See Record Document 26-1 at ¶¶ 11-12. Each time, Sotak moved to maintain his place behind Johnson. See id. Sotak eventually grabbed Johnson's right wrist and tried to bring it behind Johnson's back to safely handcuff him. See id. at ¶ 12. Before Sotak could safely fasten the right handcuff, Johnson spun around and pulled away from Sotak, at which point Johnson began to fall and at some point made contact with a portion of his own vehicle.

Page 4 of 11

See id. at ¶ 14. Sotak maintains that he attempted to hold Johnson up when he felt him begin to fall. See id. at ¶ 15. Sotak was able to handcuff Johnson's right wrist after Johnson came to a rest against the side of the driver's seat of his vehicle. See id. at ¶ 16.

Conversely, Johnson alleges that there was never a command to extend his right arm and that he tried to face Sotak in an attempt to speak with the officer. See Record Document 28-1 at ¶¶ 11-12. He maintains that the only movement he made was to face Sotak to speak. See id. at ¶ 13. Johnson maintains that Sotak deliberately swung him and forced his head into the van door frame. See id. at ¶¶ 14-15. Johnson submits that he was, in fact, fully handcuffed prior to being slammed into the van frame and that he did not need to be handcuffed because he presented no risk or threat. See id. at ¶¶ 12-16.

Sotak secured Johnson. See Record Document 26-1 at 17. Sotak then transported Johnson to University Health. See id. at ¶ 18. Upon reaching the hospital, Johnson was transferred to the care of the hospital staff and his interaction with Sotak ended. See id. at ¶ 19.

Johnson filed suit alleging excessive force under federal law and negligence, unlawful arrest and excessive force under state law. See Record Document 1. Defendants have now moved for summary judgment as to Johnson's federal excessive force claim to the extent same stems from Sotak's use of handcuffs when taking Johnson into protective custody; Monell claim against the City in its entirety; false arrest claim in its entirety; and state law excessive force and negligence claims to the extent same depend on Sotak's use of handcuffs when taking Johnson into protective custody. See Record Document 26.

## II. LAW AND ANALYSIS

### A. Partial Summary Judgment Standard.

Rule 56(a) provides, in pertinent part:

Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221

F.3d 701, 737 (5th Cir.2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

**B.  Qualified Immunity.**

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir.2003). Once the defendant raises the qualified immunity defense, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008). "Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment." Mace, 333 F.3d at 624, citing Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989).

The court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. See Freeman v. Gore, 483 F.3d 404, 410 (5th Cir.2007). First, the court must determine whether the defendant violated the plaintiff's constitutional rights. See id. "If so, [the court] next consider[s] whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Id. at 410-411. Even on summary judgment, courts can not ignore that qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012).

C.  **Monell Claim Against the City & False Arrest Claims.**

In his opposition, Johnson "agree[d] that there is insufficient evidence to support a Section 1983 action against the City of Shreveport in its official capacity." Record Document 28 at 5.[2] Likewise, Johnson agreed that "there is no viable claim for false arrest under federal or state law." Id. Thus, all Section 1983 Monell claims against the City and all false arrest claims under both state and federal law are **DISMISSED WITH PREJUDICE**.

D.  **Federal Excessive Force Claim Relating to the Use of Handcuffs.**

Johnson conceded in his opposition that he "suffered his injuries after he was handcuffed or otherwise restrained." Record Document 28 at 2. He further acknowledged that he has "no typical handcuffing injuries such as nerve damage in the wrists." Id. at 3. He admitted that he has no compensable injury from any immediate physical contact between handcuffs and his wrists, hands or arms. See id. at 5. Yet, he maintains that the jury should consider whether handcuffing at all was necessary or reasonable. See id. at 3. More specifically, he contends:

> Plaintiff contends that such a ruling as suggested by Defendants has the danger of convincing a jury that the other use of force of slamming Plaintiff's head unto the van door frame is not excessive if caused in part by handcuffs. The handcuffs are a factor in the use of force complained of herein.

Id. at 5.

In the qualified immunity context, a plaintiff must show the following to succeed on an excessive force claim: "(1) an injury (2) which resulted directly and only from the use of

---

[2] Johnson does note that his state law vicarious liability claims against the City remain. See Record Document 28 at 5.

force that was clearly excessive to the need and (3) the force used was objectively unreasonable." Williams v. Bramer, 180 F.3d 699, 703 (5th Cir.1999). The Fifth Circuit has also held that "handcuffing too tightly, without more, does not amount to excessive force." Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001). Here, Johnson has admitted that he has no compensable injury from any immediate physical contact between handcuffs and his wrists, hands or arms. He has failed to allege more than a *de minimis* injury and simply cannot make out a *prima facie* case for an excessive force claim relating to Sotak's use of handcuffs. See Williams, 180 F.3d at 703-704; see also Carlton v. Fearneyhough, No. 07-10676, 2008 WL 686595, at *2 (5th Cir. Mar. 12, 2008). Therefore, Johnson has failed to make out a *prima facie* case of a federal excessive force claim.

Moreover, Johnson's position that the jury should consider whether handcuffing at all was necessary or reasonable is misplaced. The summary judgment record contains the Order of Protective Custody. See Record Document 26-8. The undisputed MVS evidence further establishes that Sotak asked dispatch for details concerning the Order of Protective Custody and was informed that Johnson was non-compliant with his medication, was refusing to sleep, was violent with his family, and that the family considered Johnson to be a danger to himself and others. See Record Document 26, Exhibit 6. In light of this information, Sotak's actions in handcuffing Johnson were objectively reasonable in light of clearly established law at the time of the incident. See Freeman, 483 F.3d at 410. Johnson has also pointed to no case law to suggest otherwise. See Wyatt v. Fletcher, 718 F.3d 496, 503 (5th Cir. 2013) ("When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity."). At trial, the jury will hear and see evidence that Johnson was

handcuffed. It will then be for the jury to consider whether any other force used by Sotak was excessive in light of the fact that Johnson was handcuffed, not whether the initial use of handcuffs was excessive. See Record Document 29 at 4.

### E. State Law Excessive Force and Negligence Claims Relating to the Use of Handcuffs.

Johnson has alleged a state law excessive force/battery claim against Sotak in relation to the use of handcuffs. See Record Document 28 at 1. "Louisiana's excessive force tort mirrors its federal constitutional counterpart." Deville v. Marcantel, 567 F.3d 156, 172 (5th Cir. 2009). Thus, Johnson's state law excessive force/battery claim fails for the same reasons as his federal excessive force claim.

Johnson's state law negligence claim relating to the use of handcuffs also fails because this Court has found Sotak's use of handcuffs to be reasonable under the qualified immunity analysis. Thus, his negligence claims are undermined. See Roten v. City of Minden, No. 16-CV-0381, 2017 WL 1398655, at *8 (W.D. La. Apr. 18, 2017) ("The focus of the qualified immunity inquiry is reasonableness. By finding the actions of Engi and Young to be reasonable under the qualified immunity analysis, Roten's state law negligence claims are undermined.").

### III. CONCLUSION

This Court holds that partial summary judgment in favor of Defendants is appropriate as to Johnson's Monell claim against the City; false arrest claims under both federal and state law; federal excessive force claim to the extent same depends on the necessity or lack thereof in utilizing handcuffs when executing the Order of Protective Custody; and state law battery/excessive force and negligence claims to the extent same

depends on the necessity or lack thereof in utilizing handcuffs when executing the Order of Protective Custody. All such claims are **DISMISSED WITH PREJUDICE**. Johnson's federal excessive force claim and state law excessive force and negligence claims relating to the allegation that Sotak slung Johnson into his vehicle or intentionally caused Johnson to make contact with his vehicle remain.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Record Document 26) be and is hereby **GRANTED**.

An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 15th day of August, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE